# AFFIDAVIT

I, Brendan M. Donlan, having been duly sworn, do hereby depose and state as follows:

## Agent Background

1. I have been a Special Agent of the Federal Bureau of Investigation ("FBI") since 2009. I am currently assigned to the FBI's Boston Field Office and to that office's Corporate and Securities Fraud group. My duties include the investigation of violations of federal law, including investment fraud, money laundering, mail fraud, wire fraud, and other financial crimes. I received training at the FBI Academy in Quantico, Virginia in a variety of investigative and legal matters.

## Purpose of Affidavit

2. I am investigating Priya BHAMBI ("BHAMBI") and Samuel MONTRONDE ("MONTRONDE") for possible violations of 18 U.S.C. §§ 1343 (wire fraud), 1349 (conspiracy to commit wire fraud), and 1957 (money laundering), among other offenses.

3. As set forth below, there is probable cause to believe that BHAMBI and MONTRONDE devised a scheme to defraud a multinational pharmaceutical company with its U.S. headquarters in Massachusetts ("Victim A") of approximately $2.3 million. I make this affidavit in support of an application for a criminal complaint charging BHAMBI and MONTRONDE with wire fraud, and for warrants to arrest BHAMBI and MONTRONDE.

4. I also submit this affidavit in support of applications for seizure warrants for the following assets:

   a. a gray 2019 Mercedes-Benz Model E with vehicle identification number WDDZF4KBXKA643440 and Massachusetts license plate number 4CCH64 (the "Mercedes"); and

   b. any and all funds held in or on behalf of Santander Bank account            8736, in the name of Evoluzione Consulting LLC (the "Santander Account").

5.  I also request that the Court issue a warrant to search the resident garage for 133/135 Seaport Boulevard, Boston, Massachusetts, as described in Attachment A to the proposed warrant, because there is probable cause to believe that it contains evidence, fruits, and instrumentalities of the crime (*i.e.*, the Mercedes), as described in Attachment B to the proposed warrant.

6.  This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, information provided by representatives of Victim A, and my review of records described below. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint and warrants.

### Probable Cause to Believe that a Crime was Committed

### Relevant Individuals and Entities

7.  BHAMBI and MONTRONDE are residents of Boston, Massachusetts.

8.  Victim A is a multinational pharmaceutical company with its U.S. headquarters in Massachusetts. From approximately November 2017 to November 2022, BHAMBI was a senior level employee in Victim A's technology operations group.

9.  Company 1 was incorporated as a Massachusetts limited liability company on or about July 31, 2018 by an individual affiliated with BHAMBI for the purported purpose of providing information technology consulting services to Victim A. It does not appear that Company 1 ever engaged in any actual business.

10. Evoluzione Consulting LLC ("Evoluzione") is a Massachusetts limited liability company that MONTRONDE formed on or about February 7, 2022. Evoluzione's principal office is located at an address associated with MONTRONDE in Brockton, Massachusetts. Evoluzione does not appear to engage in any actual business.

**Company 1**

11.   Beginning on or about August 1, 2018, BHAMBI coordinated the execution of a master service agreement between Company 1 and Victim A.

12.   From approximately August 2018 to December 2019, Company 1 submitted purchase orders to Victim A, and Victim A made payments to Company 1 totaling approximately $300,000.

13.   In or about July 2020, Company 1 was dissolved.

**The Scheme to Defraud Victim A**

14.   From approximately January 2022 to October 2022, BHAMBI and MONTRONDE orchestrated and executed a scheme to defraud Victim A of approximately $2.3 million.

15.   On or about January 27, 2022, BHAMBI told employees of Victim A that the contract for Company 1 had "slip[ped] through the cracks…" and that Company 1 "completed the FY21 work, but ha[d] not been paid." BHAMBI further stated that Company 1 had been acquired and asked what paperwork would be required to pay the acquiring company for the services purportedly provided by Company 1. An employee of Victim A informed BHAMBI that the following documents, among other things, would be required: a formal letter proving the change in ownership, a new master service agreement, and a new statement of work.

16.   On or about January 28, 2022, BHAMBI and MONTRONDE exchanged the following text messages, among others:

   a.   BHAMBI texted MONTRONDE, "… I have put some wheels in motion to pursuit [sic] a small hustle, lol… You know how we talked about other types of work a few days ago? I basically found a seed and some seed $ for it. I can't be the face of it though." BHAMBI told MONTRONDE that he would "have to do some paper work" and that they would "have to open some accounts," "[d]ecide on a brand [he] fe[lt] comfortable with," and "[c]ome up with a name."

3

      b.      MONTRONDE texted BHAMBI, "we become millionaires and we retire babe." BHAMBI responded, "well I have a plan, lol…I feel a bit like Geppetto, lol." MONTRONDE replied, "Puppet master," and BHAMBI responded, "Although I am not calling you a puppet."

17.    On or about February 4, 2022, BHAMBI created the email address samuel@evoluzione-llc.com. In a text message exchange the same day, BHAMBI told MONTRONDE that she "want[ed] to set up a 2nd account" and asked, "what shall we name her? Jasmine or Daisy." BHAMBI and MONTRONDE agreed on Jasmine, and BHAMBI then created the email address jasmine@evoluzione-llc.com.

18.    Also on or about February 4, 2022, BHAMBI sent the following text message to MONTRONDE: "What's the first thing your [sic] going to do on the road to being a millionaire baby?" MONTRONDE responded, "A house for us," and BHAMBI replied, "A house would be my first move too baby…If I get it right…dream home 2022 for us."

19.    On or about February 7, 2022, MONTRONDE incorporated Evoluzione with the Secretary of the Commonwealth of Massachusetts. The incorporation documents identify MONTRONDE as "SOC Signatory" and describe Evoluzione as follows: "… a team that is committed to transforming the organizations that it works with. We come from humble beginnings and our method focuses on the problem solving and flexibility required to overcome obstacles and adversity."

20.    Also on or about February 7, 2022, BHAMBI submitted a letter to Victim A titled, "We Are Pleased to Announce of New Acquisition," which purported to confirm Evoluzione's acquisition of Company 1. The letter was signed by MONTRONDE, who was identified as the Managing Partner of Evoluzione. Together with the letter, BHAMBI submitted a statement of work for Evoluzione, which was also signed by MONTRONDE.

21. On or about February 8, 2022, BHAMBI texted MONTRONDE, "Once we get your EIN # we will want to set up a business account asap so that we can set up direct payments…In parallel we could start the master class in BS so that we can start building your brand and your story."

22. On or about February 11, 2022, MONTRONDE opened an account in the name of Evoluzione at SCU Credit Union (the "SCU Account"). MONTRONDE was the only signatory on the account. In the account opening documents, MONTRONDE's employer/occupation is listed as "YMCA/Youth Advocate," and the nature of Evoluzione's business is listed as "Other."

23. On or about February 18, 2022, BHAMBI texted MONTRONDE, "Lol, your [sic] already the CEO here… we just have to build everything else up and get $ flowing."

24. On or about February 23, 2022, BHAMBI texted MONTRONDE, "Evoluzione has to bill [Victim A]...Well [sic] create a template and then send out every other month per schedule…That's the easy part." MONTRONDE responded that he was excited, and BHAMBI replied, "Me too babe…feels like I've been plotting for forever."

25. In or about March 2022, Victim A finalized and signed a master service agreement with Evoluzione. MONTRONDE signed the agreement on behalf of Evoluzione.

26. On or about March 8, 2022, Victim A issued a purchase order for services to be provided by Evoluzione with a total cost of $3.542 million (the "PO"). BHAMBI was listed as the "Requester" and was also listed in the "Deliver To" section of the PO.

27. Also on or about March 8, 2022, Evoluzione issued an invoice to Victim A in the amount of $460,000.

28. On or about March 11, 2022, BHAMBI created a website for Evoluzione. The website stated that "Evoluzione Consulting LLC is a Massachusetts-based consultancy, specializing in full transformation journey management."

29. Also on or about March 11, 2022, BHAMBI texted MONTRONDE, "Finally published your site [URL for Evoluzione website]…You have three blogs posted, lol…I figure once we start listening to that class together we can find more content to blog on…then you can fake it till you make it for real."

30. On or about March 14, 2022, Evoluzione issued a second invoice to Victim A in the amount of $460,000.

31. On or about April 1, 2022, BHAMBI told MONTRONDE, via text message, that she was "about to prep an invoice." On or about the same day, Evoluzione issued a third invoice to Victim A in the amount of $460,000.

32. Also on or about April 1, 2022, BHAMBI texted MONTRONDE, "Let's buy you your Denali once this check comes in babe…We make your dream car come true."

33. On or about April 16, 2022 and May 20, 2022, Evoluzione issued two additional invoices to Victim A, each in the amount of $460,000.

34. On or about June 3, 2022, BHAMBI exchanged emails with employees of Victim A regarding the Evoluzione PO. When asked what type of work Evoluzione did, BHAMBI stated, "They are in essence connection between tool enablement and change management. They do transformational change management too, which we may use them for in the future – they have delivered on time and within budget[.] FYI – They started work with us about a year ago, but there was a backlog in there [sic] billing, because of a contracts issue (I worked with [Victim A employee] to resolve) hence the reason all the invoices hit us the same time frame."

35. On or about June 6, 2022 and June 10, 2022, Victim A sent two payments of $460,000 each to the SCU Account via interstate wire transfer. The balance in the SCU Account on June 5, 2022 was $5.00. There were no other deposits into the account during its existence. There is therefore probable cause to believe that all funds but $5.00 in the account were proceeds of wire fraud.

36. On or about June 8, 2022, an official bank check in the amount of $58,993.94, purchased with funds from the SCU Account, was issued to Mercedes-Benz of Westwood. The following handwritten notation appears on the check: "KA643440." The Mercedes (with vehicle identification number WDDZF4KBXKA643440) is registered to MONTRONDE, effective June 9, 2022. There is therefore probable cause to believe that the Mercedes was purchased with proceeds of wire fraud.

37. On or about June 23, 2022, MONTRONDE opened the Santander Account. MONTRONDE is the only signatory on the account. In the account opening documents, MONTRONDE is listed as the "Org Officer" of Evoluzione, and his occupation is listed as "Self Employed – Consultant."

38. On or about June 24, 2022, MONTRONDE purchased an official bank check in the amount of $628,569.58, using funds from the SCU Account. The check was made payable to Evoluzione. On or about the same day, MONTRONDE closed the SCU Account, which had no remaining funds.

39. Also on or about June 24, 2022, MONTRONDE deposited the official bank check in the amount of $628,569.58 into the Santander Account. Prior to this deposit, there was $100 in the Santander Account.

40. On or about July 14, 2022, BHAMBI purchased a condominium in Boston, Massachusetts for approximately $1.875 million.

41. Between approximately July 2022 and October 2022, Victim A made three payments, each in the amount of $460,000, to Evoluzione via check and interstate wire transfer. All of the funds were deposited into the Santander Account.

42. Aside from the aforementioned $100, the $628,569.58 check deposit, and the three payments from Victim A, no other deposits were made into the Santander Account from its inception through December 31, 2022. As of December 31, 2022, there was $990,000.58 remaining in the account. Based on the foregoing, there is probable cause to believe that all of the funds remaining in the account are proceeds traceable to wire fraud.

### Internal Investigation

43. Beginning in or about September 2022, questions were raised within Victim A about the work purportedly performed by Evoluzione. In response to communications from Victim A employees seeking an opportunity to discuss the matter, samuel@evoluzione-llc.com sent an email, copying jasmine@evoluzione-llc.com, stating that "Jasmine…ha[d] been working directly on the account…and c[ould] provide any details[.]"

44. Thereafter, employees of Victim A made repeated attempts to coordinate a call with "Samuel" and "Jasmine" but were unsuccessful.

45. Victim A initiated an internal investigation, which resulted in BHAMBI's termination on or about November 21, 2022.

### Probable Cause to Believe that the
### Mercedes and the Santander Account are Subject to Forfeiture

46. As set forth above, there is probable cause to believe that the Mercedes and any and all funds in the Santander Account are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C)

and 28 U.S.C. § 2461(c), because they are property, real or personal, which constitute or are derived from proceeds traceable to a violation of a specified unlawful activity, specifically, 18 U.S.C. § 1343 (wire fraud). Pursuant to 18 U.S.C. § 1961(1), as incorporated by 18 U.S.C. § 1956(7)(A), violations of 18 U.S.C. § 1343 are a specified unlawful activity.

47.     This Court has authority to issue civil seizure warrants pursuant to 18 U.S.C. § 981(b)(2), which states that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." This Court also has authority to issue the requested criminal seizure warrants pursuant to 21 U.S.C. § 853(f), as incorporated by 28 U.S.C. § 2461(c), which authorizes "the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant."

48.     Further, 18 U.S.C. § 984 allows the United States to seize for civil forfeiture identical property found in the same place where the "guilty" property has been kept. *See United States v. All Funds Presently on Deposit at American Express Bank*, 832 F. Supp. 542, 556 (E.D.N.Y. 1993). Thus, I am advised that, pursuant to 18 U.S.C. § 984(a)(1)(B), this affidavit need not demonstrate that the funds in the Santander Account are the particular monies involved in wire fraud, so long as the forfeiture is sought for other funds on deposit in that same account.

49.     Moreover, I am advised that the "fungibility" rule of Section 984(b) cannot reach back in time for an unlimited period but rather applies so long as the action to forfeit the property is commenced within one year from the date of the offense giving the basis for forfeiture. *See United States v. $79,650 Seized from Bank of America account ending in -8247, in the name of Afework*, 2009 WL 331294, *3 (E.D. Va. Feb. 9, 2009). Here, as described above, the dates of the offense giving rise to the seizure are within the one-year period.

50. A restraining order, pursuant to 21 U.S.C. § 853(e), will not be sufficient to preserve the funds in the Santander Account given the ease with which funds may move out of the account via wire transfer, electronic funds transfer, or otherwise, and despite best intentions, financial institutions cannot guarantee that money restrained, but not seized, will be available for forfeiture at a later time. A restraining order, pursuant to 21 U.S.C. § 853(e), will also not be sufficient to preserve the Mercedes given the ease with which vehicles can be moved, secreted, or transferred.

### Probable Cause to Believe that the Premises Contains Evidence, Fruits, and Instrumentalities

51. The Mercedes is registered to MONTRONDE. MONTRONDE and BHAMBI are currently residing at 135 Seaport Boulevard, Boston, Massachusetts.

52. On January 5, 2023, I observed the Mercedes parked in the resident garage for 133/135 Seaport Boulevard, Boston, Massachusetts, which is across the street from 85 Pier 4 Boulevard, Boston, Massachusetts.

53. Accordingly, I have probable cause to believe that the Mercedes is located in the resident garage for 133/135 Seaport Boulevard, Boston, Massachusetts.

### Conclusion

54. Based on the information set forth above, there is probable cause to believe that:

   a. BHAMBI and MONTRONDE committed wire fraud, in violation of 18 U.S.C. § 1343;

   b. The Mercedes and any and all funds in the Santander Account constitute proceeds traceable to wire fraud and are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   c. Evidence, fruits, and instrumentalities of the crime, as described in Attachment B to the proposed warrant, are contained within the premises described in Attachment A to the proposed warrant.

Sworn to under the pains and penalties of perjury.

*Brendan M. Donlan* /ODY
Brendan M. Donlan
Special Agent
Federal Bureau of Investigation

Subscribed to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on January 10, 2023      5:03 p.m.

*David H. Hennessy*
David H. Hennessy
United States Magistrate Judge